## GALVESTON, H. & S. A. RY. CO. v. MARCEY. (No. 1545.)*

(Court of Civil Appeals of Texas. El Paso.
Jan. 3, 1924. Rehearing Denied
Jan. 24, 1924.)

1. Railroads ⊕⊃337(4)—Premature opening of gates at crossing not proximate cause of injury.

Negligence of a railroad company in raising the gates at a crossing before a train had completely passed in violation of an ordinance, was not the proximate cause of injury to a child who ran toward the moving train and followed it down the track, and was injured by being thrown under the wheels when he stumbled over a switch stand located 93 feet from the crossing.

2. Negligence ⊕⊃136(29)—Contributory negligence of child of 10 generally for jury.

Whether a child 10 years of age shall be held guilty of contributory negligence is generally a question for the jury.

Appeal from District Court, El Paso County; B. Coldwell, Judge.

Action by Mrs. M. Marcey, as next friend for Clifford Marcey, a minor, against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, and Kemp & Nagle, of El Paso, for appellant.

Wallace & Cameron, of El Paso, for appellee.

HARPER, C. J. This is a suit by Clifford Marcey, a minor, through Mrs. M. Marcey, as next friend, to recover of the appellant damages for personal injuries, alleged to have been suffered by said minor in the following manner:

That he was traveling south on Mesa avenue on the west side thereof, and arrived at the crossing of defendant's track over and across Mesa avenue; that when he arrived at said point a train was being moved across said street and the gates were down; that he stopped for the purpose of allowing the train to pass before attempting to cross the tracks; that the said gates were raised, and plaintiff, thinking and being led to believe that the train had crossed, started to run across defendant's track, and after he had passed into the right of way and near the moving train he discovered that the entire train had not crossed the street, and, while attempting to avoid running into said train and avoid a collision, and in attempting to get into a place of safety from said moving train, he stumbled on some object in the street or his foot slipped and he was thrown or fell on or near the rail on which said train was moving, and before he could get it into a place of safety his foot was caught by the wheels and so injured as to necessitate amputation.

It is then charged that defendant was guilty of negligence in raising said gates before the train had passed entirely across Mesa avenue.

Then was pleaded the following ordinance of the city of El Paso:

"Sec. 527. Whenever any gate or guard shall have been erected, under the provisions hereof, it shall be the duty of the railway company on whom devolves the duty of maintaining and operating same to keep securely closed at the approach of and during the passage of any railway train, engine or cars across the part of street or sidewalk it is designed to protect; and any railway company violating the provisions of this article shall be subject to a penalty not exceeding fifty ($50.00) dollars, to be recovered as provided in preceding sections of this ordinance."

The defendant pleaded general denial, and that, if plaintiff was injured, it was caused by his own negligence, and, if not wholly by his own negligence, that his negligence contributed to his injuries.

Tried before a jury, and verdict and judgment for $7,000. Appealed.

[1] The first question is: Conceding that it was negligence for the agents of appellants

---

to raise the gates before the train had completely cleared the crossing, was such act the proximate cause of the injury to the minor? The evidence discloses that Mesa avenue runs north and south and at point near the accident crosses Main street. Appellant had gates to be lowered while trains passed across Mesa avenue and along Main street.

Witness Wood testified:

"I was in a Ford truck standing on Mesa avenue. A train was going by across said street. The gates were down. While I was standing there these little boys [plaintiff and another] came up by the side of the car. * * * The boys ran to the sidewalk and the gates started to raise. They began to run down the track west as the gates were about two-thirds of the way up. As to whether they ran toward the train or with the train, they ran in an angle. One boy was after the other one. I looked back just as the end of the train passed the boys, which must have been about 50 feet down the track from the sidewalk. When the boy run he run a stumbling fall. As to what I mean by stumbling fall, well, now, if I were running and was to hit a snag there, and would start to fall and try to catch myself, I would stumble and fall together, wouldn't I? I saw the little boy do that. When I saw him start to fall he must have been 30 or 40 feet from the sidewalk, running west."

Plaintiff Clifford Marcey testified:

"I was 10 years old 11th of August last, 1922. I had an accident by a train the 7th of January, this year. I had been to Gilbert's house, and was going home. His name is Gilbert Lee Conner. I lived at 212½ Mills street. I didn't get home, because the train prevented me. I don't know Mr. Wood. I saw a man standing there in an automobile, before I got hurt, and I said, 'Hello, cowboy,' or something like that, to him. At that time he was right behind the train gates, which were down. Then I came on the curb, and I saw the gates going up, and then I ran towards the train, and then I ran down the side and stumbled. I don't know why I ran towards the train. When I started to run the gates were just going up, about two-thirds of the way up. At the time I started to run I was just right in back of the gates, on the sidewalk, next to the Angelus Hotel. I don't know why I went toward the train. I knew the train was there at that time. I started to run after the gates went up. When the gates went up I don't know why I didn't stand and wait a while. I first started to run toward the train. When I started to run toward the train I saw it hadn't passed yet. I don't know why I started to run before the train had gone by. I don't know how far I ran towards the train, but about a couple of yards, I think. I don't know how close I got to the train, but just about a yard. Then I turned down the side. I don't know why I turned down the side. I don't know what happened to me when I turned down with the train. What caused me to get under the train was because I stumbled. I don't know how far I had run down the train when I stumbled, but about as far as to the second seat there [about 35 feet]. When I stumbled I got my leg cut off. When I stumbled I just fell right straight down, and I think I had run about as far as from here to the second seat. The gates were down when I first got on the sidewalk. I did not start to run before the gates went up. When I fell down I rolled over about two times before my foot was caught. I don't know how far it was from the time I first stumbled until my foot was caught, and I couldn't point out about how far it would be. I know where the extension of the sidewalk would go across the track, on Mesa avenue. When I first started to run I don't know where I ran with reference to that sidewalk. I ran down on that sidewalk to about a yard from the train. I first saw the train when I left the sidewalk, and I couldn't stop. I discovered it wasn't past yet, and then I ran down the side. I saw the gates going up, then I ran down the side and stumbled. I was about a yard—about a couple of yards—from the train when I first discovered it, and I ran on, and then I was frightened and ran down the side."

Gilbert Lee Conner, companion of Clifford Marcey at the time of the accident, testified:

"I was with Clifford Marcey the night he got hurt. We were going to a moving picture show. We saw the train when we were at the Waterworks office on Mesa, about a block away. We crossed Mesa to the west side at the corner of Main; then we went at an angle southwest, running and playing—trying to catch each other. When we got to a switch stand he fell and was run over. I think the switch stand is nearer to Mesa than to Oregon street."

The exact location of the switch stand is 98 feet west of Mesa and 163 feet from it to Oregon street, the next street from Mesa west.

Do these facts constitute a continuous succession of events so linked together as to make it a natural whole, or was there some new and independent cause intervening between the negligent act of defendant and the injury to plaintiff? The negligent act here charged is the violation of the city ordinance which charges the company with the duty to keep its gates securely closed at the approach of and during the passage of any railway train, engine, or cars across the part of the "street or sidewalk it is designed to protect." It is evident that the above ordinance was designed to protect the crossing at the intersection of Mesa avenue and Main streets, and not to protect Main street between its crossing on Mesa and that on Oregon street.

Plaintiff charged in his petition that when the gates were raised he was led to believe that the train had passed over the crossing and started to run across the track; that he then discovered that the entire train had not passed, and while attempting to avoid running into said train and avoid a collision, and while attempting to get into a place of safety from said moving train, he stumbled, etc. His testimony does not correspond with

these allegations, nor does it, giving it the the most favorable interpretation, show a continuous and unbroken connection between the raised gate and the accident. The evidence conclusively shows that he did not come in contact with the train at or near the crossing, but 93 feet west of the westerly sidewalk line of the street crossing, and the succession of events was broken by his play with his companion on and along the street, and upon that portion of it not intended to be protected by the gate, and an additional independent cause intervened, to wit, stumbling upon the switch stand, the presence of which at the point not being charged to be negligent or improper. The court should have charged the jury to find for the defendant, plaintiff in error, under these facts because there is no evidence of actionable negligence.

[2] In view of a possible review of this appeal by the Supreme Court, we have considered the other two questions, to wit, contributory negligence and the action of the court in not holding the juror disqualified, and have concluded that neither present reversible error. It is generally a question for the jury to determine whether a child of 10 under most facts shall be held to be guilty of contributory negligence, and we so find in this case. It is within the discretion of the trial court under the facts whether the juror should have been excused from service.

Reversed and rendered.